IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

REDRICK WARD,

        Plaintiff,

v.

The CITY OF EAST CLEVELAND,
SCOTT GARDNER, in his individual
and official capacity, and NICHOLAS FOTI,
WILLIE WARNER-SIMS, KALIN
BERRY, and OFFICER GERSTENBERGER,
in their individual capacities,

        Defendants.

Case No.
Hon.

---

Amanda M. Ghannam (P83065)
David Nacht (P47034)
Nacht & Roumel, P.C.
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
aghannam@nachtlaw.com
dnacht@nachtlaw.com
*Attorneys for Plaintiff*

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Redrick Ward, by and through his attorneys, Nacht & Roumel, P.C., brings this civil rights action against Defendants, the City of East Cleveland, Scott Gardner, in his individual and official capacities, Nicholas Foti, in his individual capacity, Willie Warner-Sims, in his individual capacity, Kalin Berry, in his individual capacity, and Officer Gerstenberger, in his individual capacity, and hereby alleges as follows:

### INTRODUCTION

This civil rights lawsuit arises out of a brutal assault on Mr. Redrick Ward by four East Cleveland police officers as Mr. Ward drove home after visiting his mother on the night of April

1, 2020. After pulling Mr. Ward over for a simple traffic violation, the four individual Defendant Officers – acting in accordance with the ECPD's history and custom of egregious police brutality – shattered Mr. Ward's car window, pulled him out of his vehicle, threw him to the ground, beat him with batons, tased him at least three times, and, most horrifically, stomped on his head as he lay handcuffed on the pavement. The officer who stomped on Mr. Ward, Defendant Nicholas Foti, has returned to work; he and the ECPD continue to menace the streets of East Cleveland. Mr. Ward suffered severe injuries, and now brings this action alleging violations of his Fourth and Fourteenth Amendment rights, *Monell* liability by the City of East Cleveland Defendant Chief of Police Scott Gardner, and state law claims for assault and battery and intentional infliction of emotional distress.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Redrick Ward, is a resident of the City of East Cleveland, County of Cuyahoga, State of Ohio.

2. Defendant, City of East Cleveland ("East Cleveland" or "the City"), operates the East Cleveland Police Department ("ECPD"), a law enforcement agency, and is a municipality capable of being sued under Ohio law. The city is the legal entity responsible for the ECPD. By and through its agents, including but not limited to the Mayor, the Chief of Police, its supervisors, operating officers, Boards, Commissions, Committees, and its final policymakers, Defendant City established, promulgated, and implemented the policies, customs, and practices of the EC PD, with regard to hiring, training, supervision, and discipline of ECPD employees. Plaintiff brings claims against Defendant City of East Cleveland pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

3. Defendant Scott Gardner ("Defendant Gardner") is the appointed Chief of Police for the City of East Cleveland. Under Ohio law, the chief of police shall have exclusive control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officer and employees in the police department and police auxiliary unit. On information and belief, he resides in the Northern District of Ohio. Defendant Gardner is sued in his individual and official capacity.

4. Defendant Nicholas Foti ("Defendant Foti") is a patrol officer employed by the City and the ECPD. On information and belief, he resides in the Northern District of Ohio. Defendant Foti is sued in his individual capacity.

5. Defendant Willie Warner-Sims ("Defendant Warner-Sims") is a patrol officer employed by the City and the ECPD. On information and belief, he resides in the Northern District of Ohio. Defendant Warner-Sims is sued in his individual capacity.

6. Defendant Kalin Berry ("Defendant Berry") is a patrol officer employed by the City or the ECPD. On information and belief, he resides in the Northern District of Ohio. Defendant Berry is sued in his individual capacity.

7. Defendant Officer Gerstenberger ("Defendant Gerstenberger") is a patrol officer employed by the City and the ECPD. Plaintiff is unaware of Defendant Gerstenberger's first name. On information and belief, he resides in the Northern District of Ohio. Defendant Gerstenberger is sued in his individual capacity.

8. At all relevant times, Defendants were acting under color of state law.

9. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. 1331 (federal question jurisdiction) and 28 U.S.C. 1343 (civil rights jurisdiction).

10. This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983.

11. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b), as the events took place within Cuyahoga County, Ohio, within the Northern District of Ohio.

## STATEMENT OF FACTS

### The ECPD's Pattern of Unconstitutional and Dangerous Conduct

12. The East Cleveland Police Department ("ECPD") has a well-documented history of engaging in Fourth Amendment violations and other unconstitutional and dangerous conduct.

13. For example, high-speed police chases have caused an alarming number of deaths: an individual who died after a police chase caused a vehicle to crash into a tree and catch fire[1]; a 46-year-old motorcyclist in July 2021[2]; a 27-year-old who died after a "fatal and fiery crash" in February 2021[3], to name just a few.

14. ECPD officers are known to conduct "wild, reckless chases…with a regularity unparalleled in Northeast Ohio, creating a pervasive fear among residents without accountability, review, or penalty."[4]

15. The ECPD's conduct is so well-known that when ECPD officers pull over drivers in East Cleveland, it is not uncommon for motorists to attempt to escape out of fear for their lives[5].

---

[1] One person dead after car crashes during chase with East Cleveland police, https://www.news5cleveland.com/news/local-news/cleveland-metro/one-person-dead-after-car-crashes-during-chase-with-east-cleveland-police , last accessed March 3, 2022

[2] Motorcyclist dies during pursuit involving East Cleveland police, authorities say https://www.cleveland.com/crime/2021/07/motorcyclist-dies-during-pursuit-involving-east-cleveland-police-authorities-say.html, last accessed March 3, 2022

[3] Victim identified in fiery crash after East Cleveland police chase, https://www.cleveland19.com/2021/02/03/victim-identified-fiery-crash-after-east-cleveland-police-chase/ , last accessed March 3, 2022

[4] "Police pursuits rampage East Cleveland, terrifying residents, and there's no move to stop them: East Cleveland police chases": https://www.cleveland.com/metro/2021/09/police-pursuits-rampage-east-cleveland-terrifying-residents-and-theres-no-move-to-stop-them-east-cleveland-police-chases.html, last accessed March 3, 2022

[5] Why do people run from East Cleveland police? Fear, they say https://www.cleveland.com/metro/2021/10/why-do-people-run-from-east-cleveland-police-fear-they-say.html#:~:text=Fear%2C%20they%20say,-

16. The ECPD's history and pattern of misconduct are so egregious that the popular podcast "Serial" dedicated an entire episode to East Cleveland police misconduct and corruption[6].

17. Defendants City of East Cleveland and Chief of Police Scott Gardner are well aware of this clear and persistent pattern of unlawful activity[7].

18. The events giving rise to this lawsuit occurred within this context of high-profile, extremely dangerous incidents of police misconduct in East Cleveland.

**Defendant ECPD Officers Foti, Warner-Sims, Berry, and Gerstenberger Brutally Beat, Tase, and Stomp on Mr. Ward During a Traffic Stop**

19. Plaintiff, Redrick Ward, is a 38-year-old African American male.

20. At all relevant times, Mr. Ward had a valid driver's license.

21. In the early morning of April 1, 2020, Mr. Ward was driving through the City of East Cleveland on the way home from a visit to his elderly mother, who had fallen ill.

22. Mr. Ward was alone in his vehicle.

23. Mr. Ward possessed no narcotics, alcohol or other paraphernalia, and no weapons.

24. At approximately 2:00 A.M.., as Mr. Ward was driving home on Euclid Avenue, Defendant Nicholas Foti informed officers via his radio that he was pursuing Mr. Ward's vehicle for allegedly driving on the sidewalk.

25. Several additional ECPD patrol vehicles responded to Defendant Foti's call and joined his pursuit of Mr. Ward.

---

Updated%3A%20Oct.&text=EAST%20CLEVELAND%2C%20Ohio%20%E2%80%93%20East%20Cleveland,rearview%20mirror%2C%20fear%20takes%20over. , last accessed March 3, 2022
[6] See, e.g., Serial Season 3, Episode 6: spotlight moves to East Cleveland https://www.cleveland.com/news/erry-2018/10/86dd013fd9821/serial-season-3-episode-6-spot.html, last accessed March 3, 2022
[7] See, e.g., Police Chief takes to Facebook to defend chases: East Cleveland police chases, https://www.cleveland.com/metro/2021/10/police-chief-takes-to-facebook-to-defend-against-chases-east-cleveland-police-chases.html , last accessed March 3, 2022

26. Mr. Ward continued to drive at a safe speed, never exceeding 40 miles per hour.

27. During the pursuit, Mr. Ward stopped his vehicle a total of three (3) times.

28. When Mr. Ward first pulled over his vehicle, he was immediately surrounded by at least three ECPD vehicles.

29. Defendants Warner-Sims, Berry, and Gerstenberger approached Plaintiff's vehicle with their handguns drawn and aimed at him.

30. Mr. Ward, fully aware of the ECPD's history of racial profiling against Black men and frequent use of excessive force, feared for his life, as do many residents of the Cleveland area when pursued by the ECPD.

31. Out of a genuine and well-founded fear for his life and safety, Mr. Ward, in a panic, made a split-second decision to attempt to drive away.

32. However, after approximately one additional minute, Mr. Ward pulled over his vehicle a second time.

33. The Defendant ECPD officers immediately swarmed around Mr. Ward's vehicle again.

34. Defendant Warner-Sims approached Mr. Ward's vehicle and immediately swung his department-issued baton directly into Mr. Ward's driver-side window, shattering the window and showering Mr. Ward with shards of glass.

35. After this immediate and unnecessary display of force, Mr. Ward's fears that he was in imminent danger were confirmed, and he again attempted to drive away from the officers out of fear for his life.

36. The Defendant ECPD officers pursued Mr. Ward for approximately thirty more seconds, until Defendant Nicholas Foti deployed "stop sticks," deflating both the driver side front tire and the passenger side rear tire and stopping Mr. Ward's vehicle.

37. Defendants Warner-Sims, Berry, and Gerstenberger exited their vehicles, approached Mr. Ward's vehicle, opened its driver-side door, and seized Mr. Ward, pulling him out of his car and roughly throwing him onto the ground with an unnecessary and excessive amount of force.

38. Defendant Warner-Sims and Defendant Berry then held Mr. Ward face-down on the pavement while Defendant Gerstenberger held down his legs, pinning Mr. Ward to the concrete.

39. Defendants Warner-Sims, Berry, and Gerstenberger ordered Plaintiff to put his hands behind his back and handcuffed him.

40. Mr. Ward was fully pinned to the ground by the three officers and was unable to move at all.

41. Defendant Foti then approached Mr. Ward and the other Defendant officers.

42. Defendant Foti used his department-issued electronic compliance device to tase Plaintiff twice in his side.

43. As Defendant Foti "tased" Mr. Ward, Defendants Warner-Sims, Berry and Gerstenberger beat Mr. Ward with their fists and batons, while he cried out in agony.

44. Defendant Foti then walked around Mr. Ward and positioned himself in front of Mr. Ward's head, which was covered by the hood of his sweatshirt.

45. Mr. Ward was unable to see what was going on around him as he was beaten and tased.

46. While Defendants Warner-Sims, Berry, and Gerstenberger knelt on Mr. Ward's body to hold him in place, Defendant Foti stomped on Mr. Ward's head with an unreasonable and excessive amount of force.

47. Defendant Foti then returned to Mr. Ward's side and "tased" him with his department-issued electronic compliance device for a third time.

48. As Defendant Foti "tased" Mr. Ward, Defendant Berry punched Mr. Ward in the back of his neck and shoulder.

49. The amount of force used by Defendants Foti, Warner-Sims, Berry, and Gerstenberger against Mr. Ward was completely unnecessary under the totality of the circumstances and far exceeded the bounds of reasonableness.

50. At no time whatsoever had Mr. Ward done or said anything that could have justified the Defendant officers' use of force against him.

51. At no time whatsoever did Mr. Ward pose any threat or danger whatsoever to any of the Defendant officers (or anyone or anything else).

52. Defendants Foti, Warner-Sims, Berry, and Gerstenberger did not make a split-second judgment when they used excessive force against Mr. Ward.

53. At some point, an ambulance arrived on the scene and transported Mr. Ward to the University Hospitals Cleveland Medical Center in Cleveland, Ohio, for immediate treatment.

54. In addition to the beatings and repeated use of Defendant Foti's taser, Mr. Ward had sustained an abrasion on his chin and a laceration on his left cheek where a large piece of glass was lodged.

55. None of the Defendant Officers submitted a Use of Force Report after their collective assault on Mr. Ward.

8

**Defendants Failed to Investigate the Incident Until A Year Later, Revealing a Pattern of Excessive Force within the ECPD; Defendants City and Gardner Permit Defendant Foti to Return to Work**

56. On March 1, 2021, undersigned counsel submitted a public records request for body camera footage from the incident described *supra.*

57. Only after receiving counsel's request was Detective Sergeant Dominique King ("Det. Sgt. King") of the ECPD's Department of Internal Affairs tasked with investigating the incident.

58. Det. Sgt. King reviewed the recorded footage and observed the details of Defendants Foti, Warner-Sims, Berry, and Gerstenberger's actions.

59. On March 8, 2021, the City of East Cleveland, through ECPD, launched an official Internal Affairs Investigation into Defendant Foti's conduct against Mr. Ward.

60. During the Internal Affairs Investigation, Det. Sgt. King noted that Defendant Foti had previously been disciplined for using his electronic compliance device to tase another person, failing to document the incident by completing a "Use of Force Report", and failing to ensure the person was treated by medical personnel or paramedics prior to turning him in to a different police agency.

61. In a letter dated November 13, 2018, referring to Defendant Foti's actions, Commander William Mitchell ("Cmdr. Mitchell") stated: "That is ridiculous. That not only makes us look bad to another agency, [it] leaves East Cleveland Police open to liability from the arrested party, it also hints at a general 'lawlessness'… This was a complete breakdown of police procedure as well as a failure to supervise officers."

62. Defendant Foti received a formal written reprimand, and Defendants City of East Cleveland and Chief of Police, Defendant Scott Gardner were on notice of Defendant Foti's use of excessive force and failure to document his practices pursuant to standard police procedure.

63. On March 8, 2021, Defendant Gardner notified Defendant Foti that he was being placed on administrative leave until the investigation into his actions related to Mr. Ward concluded.

64. However, Defendant Gardner and the City provided Defendant Foti with full salary and benefits while he was on administrative leave.

65. On or about March 10, 2021, Det. Sgt. King informed Sergeant Carroscia (first name unknown) that he was unable to locate the required Incident and Use of Force Reports that Defendant Foti had been required after his interactions with Mr. Ward.

66. Sergeant Carroscia told Det. Sgt. King that a Use of Force Report had been completed on April 1, 2020, but it was lost, and he did not know why.

67. Sergeant Carroscia further stated that according to his daily log, Defendant Foti had failed to complete a Use of Force Report.

68. Sergeant Carroscia provided to Det. Sgt. King a Use of Force Report purportedly submitted by Defendant Berry.

69. The Use of Force Report was unsigned, incomplete, and lacking any contribution from Defendant Foti or the other officers involved in the incident.

70. Det. Sgt. King noted that the report she received from Sergeant Carroscia was unusable for *any* public record request or legal purpose.

71. On or about March 11, 2021, Defendant Warner-Sims provided a statement for the Internal Affairs Investigation, stating that he and Defendant Berry had control over Mr. Ward when Defendant Foti stomped on his head.

72. Based on Defendant Warner-Sims' submission, Det. Sgt. King concluded that Defendant Foti's actions were "unnecessary and unneeded."

73. On March 11, 2021, Det. Sgt. King sent notice via email to the Fraternal Order of Police Representative Lucy Dinardo and Defendant Foti, informing them that the Department would be bringing disciplinary charges against Defendant Foti and providing a Pre-Disciplinary Hearing.

74. Defendant Foti was charged with violating ECPD Policy Number 119: Standards of Conduct (Class II Offense); Policy Number 102: Use of Force (Class I Offense); and Policy Number 132: Incident Reporting (Class II Offense).

75. On March 15, 2021, Defendant Foti failed to appear at his Pre-Disciplinary Hearing.

76. Ms. Dinardo claimed Defendant Foti's email was shut down when he was placed on paid leave of absence. However, a Microsoft Outlook Audit Log showed that Defendant Foti had opened the email containing the notice of the hearing.

77. The Pre-Disciplinary Hearing originally scheduled for March 15, 2021, was re-scheduled to March 17, 2021. However, Defendant Foti elected to waive his hearing.

78. Thus, all Departmental Charges against Defendant Foti were sustained by a panel consisting of Commander Brian Gerhard, Commander Robert Bailey, Sergeant Wilbert Nevels, as well as the city-elected neutral party, Director of Human Resources Belinda Kyle.

79. The panel also recommended to forward the matter to the Mayor/Safety Director for review as a Class I Offense.

80. A Mayor's Hearing was then scheduled for March 22, 2021, requiring Defendant Foti was to answer to the Departmental Charges of:

    a. 9.001 Conduct: General; and

    b. 9.032 Conduct: Obedience to Policy and Procedure

81. At the conclusion of the Mayor's Hearing, Defendant Foti's employment with the City was terminated.

82. However, on July 19, 2021, Defendants City of East Cleveland and Gardner re-hired Defendant Foti.

83. Defendant City and Garner's conduct in permitting Defendant Foti to return to his employment is an indicator of Defendants City of East Cleveland and Gardner's policy, practice and/or custom of enabling police officers employed by ECPD to violate the Fourth Amendment rights of residents in East Cleveland without consequence or accountability.

**COUNT I**
**Fourth/Fourteenth Amendment: Unreasonable and Excessive Force**
**42. U.S.C. § 1983**
**(Against Defendants Foti, Warner-Sims, Berry and Gerstenberger)**

84. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

85. At all relevant times, Defendants have acted under color of state law.

86. Defendants Foti, Warner-Sims, Berry, and Gerstenberger's conduct violated Plaintiff's clearly established rights pursuant to the Fourth Amendment of the United States Constitution to be free from unreasonable, excessive and arbitrary force under color of law.

87. Defendants Foti, Warner-Sims, Berry, and Gerstenberger are each a "person" within the meaning of 42 U.S.C. § 1983.

88. Defendants' arbitrary and indiscriminate use of force against Plaintiff described herein was excessive and objectively unreasonable, in direct violation of Plaintiff's rights under the Fourth Amendment.

89. Plaintiff did not pose any immediate threat to the safety of any officer.

90. Defendants were not met with split second decisions, as they were present on the scene observing for a substantial period of time prior to deploying unreasonable and excessive force.

91. Defendants acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

92. The constitutional rights that Defendants violated were clearly established at the time that the violations occurred and any reasonable individual in Defendants' position would have understood that their conduct violated said rights.

93. Defendants are therefore not entitled to qualified immunity.

## COUNT II
## Assault and Battery

94. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

95. At all relevant times, the individual Defendants were acting in the course and scope of their employment with Defendant City of East Cleveland.

96. Defendants intended to cause, and did cause, harmful and offensive contact with Plaintiff and acted intentionally in that they intended to commit an assault and battery or should have been substantially certain that an assault and battery would result from their conduct.

97. Defendants' conduct was unreasonable and outrageous and was willful, wanton, malicious, and oppressive, justifying an award of punitive damages and other exemplary damages.

98. Defendant City of East Cleveland and Scott Gardner are directly liable for the conduct of Defendants Foti, Warner-Sims, Berry, and Gerstenberger by virtue of their actual knowledge of Defendant Foti's propensity to use constitutionally excessive forc and their failure to train and supervise their employees.

### COUNT III
### Intentional Infliction of Emotional Distress

99. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

100. At all relevant times, the individual Defendants were acting in the course and scope of their employment with Defendant City of East Cleveland.

101. Defendants Foti, Warner-Sims, Berry, and Gerstenberger's conduct towards Plaintiff was so extreme and outrageous as to constitute intentional infliction of emotional distress.

102. Defendants Foti, Warner-Sims, Berry, and Gerstenberger's conduct was foreseeable to Defendants City of East Cleveland and Gardner.

103. Defendant City of East Cleveland and Scott Gardner are directly liable for the conduct of Defendants Foti, Warner-Sims, Berry, and Gerstenberger by virtue of their actual knowledge of Defendant Foti's propensity to use constitutionally excessive force and their failure to train and supervise their employees.

### COUNT IV
### Fourth/Fourteenth Amendment: Failure to Intervene
### 42 U.S.C. 1983
### (against Defendants Foti, Warner-Sims, Berry, and Gerstenberger)

104. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

105. At all relevant times, Defendants were acting under color of state law.

106. Each of the individual Defendant Officers, Foti, Warner-Sims, Berry, and Gerstenberger, observed or had reason to know that excessive force would be or was being used against Plaintiff.

107. Each of the individual Defendant Officers, Foti, Warner-Sims, Berry, and Gerstenberger, had both the opportunity and the means to prevent the harm from occurring.

108. Defendant Foti did not take any action to prevent the harm from occurring; rather, he enthusiastically participated in violating Plaintiff's constitutional rights.

109. Defendant Warner-Sims did not take any action to prevent the harm from occurring; rather, he enthusiastically participated in violating Plaintiff's constitutional rights.

110. Defendant Berry did not take any action to prevent the harm from occurring; rather, he enthusiastically participated in violating Plaintiff's constitutional rights.

111. Defendant Gerstenberger did not take any action to prevent the harm from occurring; rather, he enthusiastically participated in violating Plaintiff's constitutional rights.

112. Defendants acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

113. The constitutional rights that Defendants violated were clearly established at the time that the violations occurred and any reasonable individual in Defendants' position would have understood that their conduct violated said rights.

114. Defendants are therefore not entitled to qualified immunity.

### COUNT V
### 42. U.S.C. § 1983, 42 U.S.C § 1988
### Monell Liability
### (Against Defendants City of East Cleveland and Scott Gardner)

115. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

116. Defendant City of East Cleveland is a "person" within the meaning of 42 U.S.C. § 1983.

117. Defendant Gardner is a "person" within the meaning of 42 U.S.C. § 1983.

118. At all relevant times, the actions and omissions of Defendant City of East Cleveland and their agents were undertaken under color of state law.

119. At all relevant times, Defendant City of East Cleveland, through its Police Department, maintained and implemented a policy, practice and/or custom, supported and ratified by its supervisory officials, including Defendant Gardner, of allowing its police officers to use excessive force in violation of the Fourth Amendment.

120. Defendant City of East Cleveland was on actual notice that its police officers, including the individual Defendants, engaged in these unconstitutional practices, and thereby ratified, condoned, and acquiesced in the Defendant Officers' unconstitutional conduct.

121. The individual Defendants' conduct was committed pursuant to the customs, policies, and/or practices of Defendant City of East Cleveland.

**COUNT VI**
**42. U.S.C. § 1983, 42 U.S.C § 1988**
**Monell Liability – Failure to Train/Supervise/Discipline**
**(Against Defendants City of East Cleveland and Scott Gardner)**

122. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

123. Defendant City of East Cleveland is a "person" within the meaning of 42 U.S.C. § 1983.

124. Defendant Gardner is a "person" within the meaning of 42 U.S.C. § 1983.

125. Defendants City of East Cleveland and Scott Gardner were responsible for training the police officers of the ECPD, including Defendants Foti, Warner-Sims, Berry, and Gerstenberger.

126. Defendants City of East Cleveland and Scott Gardner failed to adequately train its officers, including Defendants Foti, Warner-Sims, Berry, and Gerstenberger, on constitutional requirements, including but not limited to Fourth Amendment violations.

127. The ECPD's training was inadequate to the Defendant Officers' job duties as they relate to Fourth Amendment violations.

128. As a result, the ECPD has engaged in a clear and persistent pattern of Fourth Amendment violations, of which Defendants City of East Cleveland and Scott Gardner had both actual and constructive knowledge.

129. Defendants City of East Cleveland and Scott Gardner were, at all relevant times, deliberately indifferent to the inadequacy of the ECPD's training and the resultant pattern of constitutional violations.

130. The inadequacy of the ECPD's training was closely related to or actually caused the injuries to Plaintiff described herein.

## DAMAGES

131. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injuries and damages, past and future, including but not limited to pain and suffering; loss of enjoyment of life; fear and anxiety; humiliation and embarrassment; medical expenses; and loss of work, career opportunity, and earning capacity.

## DEMAND FOR TRIAL BY JURY

Plaintiff, Redrick Ward, hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, for the foregoing reasons, Plaintiff REDRICK WARD demands judgment against Defendant as follows:

  A. A declaration that the aforementioned practices of Defendants constitute unlawful violations of Plaintiff's constitutional rights;

  B. Compensatory non-economic and economic damages in whatever amount Plaintiff is found to be entitled, including but not limited to all damages recoverable under the United States Constitution, 42 USC § 1983;

  C. Punitive damages in whatever amount Plaintiff is found to be entitled;

  D. An award of interest, costs, and attorneys' fees; and

  E. An award of such other relief as this Court deems just and proper.

Respectfully submitted,
NACHT & ROUMEL, P.C.

By: */s/ Amanda M. Ghannam*
Amanda M. Ghannam (P83065)
David A. Nacht (P47034)
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
aghannam@nachtlaw.com
dnacht@nachtlaw.com

Dated:  March 7, 2022