**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REDRICK WARD, | ) | CASE NO. 1:22-CV-00372 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF EAST CLEVELAND, et al., | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |

Before the Court is the Motion of Defendants, City of East Cleveland ("City"), Chief of Police Scott Gardner ("Chief Gardner"), and Officers Willie Warner-Sims, Kalin Berry and Derek Gerstenberger ("Officers"), to Dismiss Plaintiff's Complaint Under Civ. R. 12(b)(6), or in the Alternative, Motion for Summary Judgment (ECF No. 3). Plaintiff, Redrick Ward, timely opposed Defendants' Motion. (ECF No. 4). Defendants filed a Reply Brief in support of their Motion. (ECF No. 5). For the reasons set forth below, Defendants' Motion is DENIED.

## I.    FACTUAL BACKGROUND

On March 7, 2022, Ward filed this civil rights action under 42 U.S.C. §§ 1983 and 1988 against the City, Chief Gardner, the Officers, and Officer Nicholas Foti. (ECF. No. 1, Compl., PageID# 2–3). Ward claims that his Fourth and Fourteenth Amendment rights were violated on April 1, 2020, when Officers and Officer Foti beat and tased Ward during a traffic stop. (*Id.* at PageID# 1–2). Ward also alleges that the City and Chief Gardner failed to adequately train and supervise Officers and Officer Foti, instead maintaining policies and practices that allowed the City's police to use excessive force without meaningful consequences. (*Id.* at PageID# 16). Ward

1

also brings state tort claims of assault, battery, and intentional infliction of emotional distress.  (*Id.* at PageID# 13–14).

On April 1, 2020, Officer Foti pursued Ward after allegedly observing Ward driving on the sidewalk, and Officers joined the pursuit.  (*Id.* at PageID# 5).  After Ward pulled over, Officers and Officer Foti approached his vehicle with their guns drawn, and Ward alleges that he drove away out of fear for his life.  (*Id.* at PageID# 6).  Officer Foti and Officers pursued Ward, and he pulled over a second time.  (*Id.*).  Officer Foti used his baton to break Ward's driver's-side window, shattering glass onto Ward.  (*Id.*).  Ward drove away again, and Officers and Officer Foti pursued him a third time before using stop sticks to deflate two of Ward's tires.  (*Id.* at PageID# 6–7). Officers then pulled Ward out of the car and threw him onto the ground.  (ECF No. 1, PageID# 6–7).  Officers Warner-Sims and Berry held Ward facedown on the ground with the hood of Ward's sweatshirt covering his head, while Officer Gerstenberger held Ward by the legs and handcuffed Ward's hands behind his back.  (*Id.* at PageID# 7).

Officer Foti approached and tased Ward twice, while Officers beat Ward with their fists and batons.  (*Id.*).  Officer Foti approached Ward's head, and while Officers held him down, Officer Foti stomped on Ward's head; Defendants do not dispute this.[1]  (*Id.* at PageID# 7–8). Officer Foti then tased Ward again and Officers resumed beating him, striking his neck and shoulder.  (*Id.* at PageID# 7–8).  Ward also sustained an abrasion on his chin and a laceration on his cheek from broken glass.  (*Id.*).

---

[1] According to Defendants, "Warner Sims stated that he saw a foot applied to Mr. Ward's body," and video footage reviewed about one year after the incident "revealed that the foot belonged to Officer Foti."  (ECF. No. 3, PageID# 49).

Ward was arrested and charged with having physical control of a vehicle while under the influence (a non-moving traffic violation), failure to comply with the lawful order of police, and fleeing.  *See City of East Cleveland v. Ward*, No. 20TRD01249 (East Cleveland Mun. Ct.).  The City ultimately dismissed the charge for physical control while under the influence.  *Id.* (*see* June 3, 2020 docket entry).[2]  Ward's charges were further amended on June 3, 2020; the City removed the charges for failure to comply and fleeing law enforcement, and changed them to speeding and having an expired license plate.  (*Id.*).  Ward pleaded no contest to speeding and the expired license plate, and the court found him guilty of those two offenses on June 3, 2020.  (*Id.*).[3]

A "Use of Force" report is normally completed after the City's police officers use the type of force described in Ward's Complaint, but the Complaint states that neither Officers nor Officer Foti documented this incident in accordance with the City's policy.  (*Id.* at PageID# 8–10).  Because no report was filed, the City claims that it did not know about the incident[4]; that claim notwithstanding, the City did not investigate the circumstances of Ward's arrest until one year later, after Ward hired counsel and body-cam footage of Ward's arrest was given to television

---

[2] There is also no evidence in the documents attached to Defendants' Motion, particularly no police report, supporting Officers' claim that Ward was under the influence when he was arrested.

[3] Defendants' Motion incorrectly states more than once that the municipal court also found Ward guilty of failure to comply with the lawful order of police and fleeing.  (ECF No. 3, PageID# 49, 60).  Ward was not convicted of a crime indicating non-compliance with police orders.

[4] The documents attached to Defendants' Motion muddy the waters as to what the City knew, and when, about Ward's arrest.  While Officer Berry did not sign or personally date the form, a Use of Force report appears to have been completed less than one hour after the incident; the "Investigation Date" field lists "04/01/2020" as the date of the investigation, and "0300" as the time.  (ECF No. 3-4, PageID# 103).  For reference, the Use of Force form alleges that the incident occurred at "0210" on the same date.  (*Id.*).  The Internal Affairs Report corroborates that Officer Berry completed at least some of the "Use of Force" report immediately after the incident.  (*Id.* at PageID# 77).  The "Use of Force" form completed by Officer Berry states that "Ward was struck in the neck/ shoulder area, as well as drive stunned before he complied with Officers orders and was placed into handcuffs."  (*Id.* at PageID# 107).

media. (*Id*; ECF No. 3, PageID# 50).  This was the second incident in which Officer Foti did not complete the "Use of Force" form during his employment with the City, having been disciplined previously for the same behavior.  (ECF No. 1, PageID# 9; ECF No. 3, PageID# 50).  After the City's investigation, the City charged Officer Foti with violating ECP Policy 119: Standards of Conduct (Class II Offense); Policy 102: Use of Force (Class I Offense); and Policy 132: Incident Reporting (Class II Offense).  (ECF No. 1, PageID# 11–12).  The charges were sustained following a Mayor's hearing, and Officer Foti was terminated.  (*Id.* at PageID# 10–11; ECF No. 3, PageID# 49–50).  Officer Foti was later rehired.  (ECF No. 1, PageID# 12).  Defendants allege that Officer Foti's rehiring resulted from a grievance Officer Foti filed with the Police Union.  (ECF No. 3, PageID# 50).

Ward asserts that the City has a pattern of unconstitutional conduct, and that both the City and Chief Gardner are responsible for the customs and policies—and conduct—of the police officers they employ.  (ECF No. 1, PageID# 4–5).  Ward's Complaint cites numerous instances of the City's police officers engaging in deadly car chases and brutalizing local citizens during 2021. (*Id.*).  The Complaint also refers to a popular investigative podcast, "Serial," that dedicated an episode to the City's alleged police "misconduct and corruption," including allegations of a patterned use of excessive force.  (*Id.* at PageID# 5).

## II.    <u>MOTION STANDARD</u>

Defendants filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  (ECF No. 3).  To survive Defendants' Rule 12(b)(6) motion, Ward's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  Plausibility is not probability; plausibility "simply calls for enough fact to raise a reasonable expectation that discovery" will be fruitful.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007).  Ultimately, a claim is facially plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for his actions.  *Iqbal*, 556 U.S. at 678.

Defendants' Motion argues that they are entitled to qualified immunity.  (ECF No. 3).  The United States Supreme Court has expressed the importance of "resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The Sixth Circuit urges district courts deciding a motion to dismiss to consider qualified immunity by determining whether the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law.  *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  To show that a right was clearly established, the facts alleged in the complaint should be sufficiently clear that a reasonable officer would know that his actions were unlawful under those circumstances.  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 900 (6th Cir. 2014).

The Sixth Circuit has also cautioned district courts about granting Rule 12(b)(6) motions based on qualified immunity.  *Wesley v. Campbell*, 799 F.3d 421, 433–34 (6th Cir. 2015).  Generally, qualified immunity should be raised in a motion for summary judgment, not a motion to dismiss.  *Grose v. Caruso*, 284 F. App'x. 279, 283 (6th Cir. 2008).  In *Grose*, the plaintiff brought a § 1983 claim against correctional officials for violating her constitutional rights, and the defendants moved to dismiss under Rule 12(b)(6) based on qualified immunity.  *Id.* at 280.  The motion was denied by the district court and the decision affirmed by the Sixth Circuit because

5

dismissal on that basis was premature; the plaintiff's complaint set forth sufficient allegations to trigger § 1983 liability. *Id.* at 283. *See also McCombs v. Granville Exempted Vill. Sch. Dist.*, No. 2:07-cv-00495, 2009 WL 467066, *7–8 (S.D. Ohio Feb. 24, 2009) (denying motion to dismiss since the complaint alleged a constitutional violation, and at that point in the proceedings it would be premature to dismiss based on qualified immunity).

Importantly, "matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997).  If the parties refer to matters outside the pleadings and the Court considers those matters when ruling on the motion, it should treat the motion as one for summary judgment under Fed. R. Civ. P. 56. *Jones v. City of Cincinnati,* 521 F.3d 555, 557 (6th Cir. 2008).  The Court may consider the complaint and its exhibits, public records, items in the record, and exhibits attached to the defendant's motion to dismiss if they are referenced in the complaint and central to the plaintiff's claims without converting the motion to a summary judgment motion. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

If this Court were to consider all of Defendants' exhibits to their Motion, it must also convert the motion into one for summary judgment. (ECF No. 3).  Defendants' Motion includes as exhibits: (A) the Police Report, which includes a letter dated almost one year after the incident; (B) the municipal court docket, showing Ward's charges and convictions; (C) a letter from Mayor Brandon King to Officer Foti terminating his employment; (D) the internal affairs report, prepared March 19, 2021, concerning the Officers' use of force during the incident; (E) several pieces of correspondence between Commander W. Mitchell and Seargent R. Bailey of the City's police department concerning the incident; (F) a grievance report form prepared by Officer Foti and filed

with the Fraternal Order of Police; and (G) a letter from Bruce B. McIntosh to Ms. Willa Hemmons (a City employee) ordering Officer Foti's reinstatement.

If extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and add nothing new," they may be considered without converting the motion to one for summary judgment.  *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir. 1997).  If the Motion is converted, however, Fed. R. Civ. P. 56 requires this Court to consider only the pleadings, discovery responses, and affidavits, when deciding whether there is a genuine issue as to any material fact.  Here, none of the documents attached to Defendants' Motion are authenticated; Defendants filed no affidavit attesting to these records.  The municipal court docket (B) is a public record, and thus reviewable by this Court.  *Bassett*, 528 F.3d at 430.  The police report (A), mayor's letter (C), internal affairs investigation report (D), and internal correspondence (E), all tend to fill in details of allegations within plaintiff's complaint, and are therefore also reviewable. *Yeary*, 107 F.3d at 445.  The remaining documents concerning Officer Foti's grievance and its outcome are outside the pleadings and will not be discussed further.

Due to the lack of affidavits and discovery, and since most of Defendants' exhibits are reviewable under the motion to dismiss standard, this Court will review Defendants' Motion under the Fed. R. Civ. P. 12(b)(6) standard without conversion to a pre-discovery motion for summary judgment.

## III.   DISCUSSION

### A.   Defendants Are Not Entitled to Blanket Statutory Immunity

Ohio provides statutory immunity to political subdivisions and, relevant here, their law enforcement officers, "for injury, death, or loss to person or property allegedly caused by any act

or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  Ohio Rev. Code Ann. § 2744.02 (A)(1) (West 2016); *see McCloud v. Nimmer*, 595 N.E.2d 492, 495 (Ohio Ct. App. 1991) ("[P]olice services have always been considered a governmental, not a proprietary, function.").  This immunity is not absolute; pertinent here, a municipality and its police officers may be liable for a person's injuries if the officers acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." *Wingfield v. Cleveland*, 8th Dist. No. 100589, 2014-Ohio-2772, ¶ 18.  The Ohio Supreme Court has held that the issue of whether an officer acted maliciously is a question for the trier of fact. *Fabrey v. McDonald Vill. Police Dep't.*, 639 N.E.2d 31 (Ohio 1994).

The Complaint alleges malice; taken with the misconduct alleged on the part of Officers, this is plausible enough to overcome the blanket immunity provided by R.C. § 2744.02 at this stage of the litigation.  Ward claims that "Defendants' conduct was unreasonable and outrageous and was willful, wanton, malicious, and oppressive . . . ."  (ECF No. 1, PageID# 13).  Ward alleges that Officers (1) shattered glass in his face (*id.* at PageID# 6); (2) pulled him to the ground and covered his head with his hood (*id.* at PageID# 7); (3) beat his body with fists and batons (*id.*); (4) tased him three times after he was handcuffed (*id.* at PageID# 7–8); and (5) stomped on his head (*id.* at PageID# 8).  The Complaint also alleges deliberate indifference on the parts of Chief Gardner and the City when they "implemented a policy, practice, or custom, . . . of allowing [the City's] police officers to use excessive force in violation of the Fourth Amendment."  (ECF No. 1, PageID# 16).  The Court finds that these allegations could support a finding of malice and, therefore, Ward's Complaint cannot be dismissed based on R.C. § 2744.02 alone.

8

### B.        Section 1983 Liability of Officers

There are two parts to analyzing whether Officers' conduct amounted to excessive force that would violate Mr. Ward's civil rights: a) the constitutional right at issue, and b) the elements and rules associated with the violation of that right. *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976).  On the first issue, the Supreme Court recognizes an established Fourth Amendment right of free citizens to be free from excessive force.  *Baker v. City of Hamilton*, 471 F.3d 601, 602 (6th Cir. 2006) (citing *Graham v. Conner*, 490 U.S. 386, 388 (1989)). Ward's Fourth Amendment right to be free from excessive force is at issue.

On the second part, the Supreme Court in *Graham* established that all claims brought under 42 U.S.C. § 1983 alleging the use of excessive force by a police officer during an investigatory stop should be analyzed under an "objective reasonableness" standard.  *Graham,* 490 U.S. at 388. The Court discussed three factors for courts to balance when determining whether the force used was reasonable: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect actively resisted arrest or tried to evade arrest. *Id.* at 396.

The Supreme Court has recognized that when a court is balancing the reasonableness factors, it should also consider that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.  The Sixth Circuit emphasizes that the three *Graham* factors are not exhaustive, and that courts should consider the totality of the circumstances to determine whether a particular level of force is justified. *St. John v. Hickey*, 411

F.3d 762, 771 (6th Cir. 2005). The reasonableness of an officer's use of force is evaluated from the perspective of an objective officer. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).

1.    *Severity of the Crime at Issue*

The first *Graham* factor to consider is whether Ward's crime was a serious offense. *Graham*, 490 U.S. at 396. Typically, the more violent an offense is, the more likely that an officer's use of force is justifiable. *See, e.g.*, *Goodrich v. Everett*, 193 F. App'x 551, 555 (6th Cir. 2006) (holding that kicking an arrestee and breaking his ribs was justified when the arrestee was suspected of domestic violence and fleeing from officers); *but see Landis v. Baker*, 297 F. App'x 453, 457 (6th Cir. 2008) (reversing the district court's finding of reasonable force because a reasonable jury could conclude that officers used excessive force when, despite the arrestee fleeing police after a traffic offense, choking an arresting officer, and violently resisting arrest until he lost consciousness, officers beat the arrestee with batons, held his head beneath water, and tased him five times, eventually causing his death).

Ward was arrested and charged with physical control of an automobile while under the influence, failure to obey the lawful order of police, and fleeing, in East Cleveland Municipal Court's traffic division. (ECF No, 3-2, PageID# 74); *East Cleveland v. Ward*, No. 20TRD01249 (East Cleveland Mun. Ct.). The City dismissed the physical control charge, and amended the remaining charges to speeding and driving with an expired license. (*Id.*). Ward pleaded no contest, and was found guilty of these crimes—two, non-violent misdemeanors. The court sentenced him to pay fines totaling $205.00, plus costs. Since Ward's crimes were non-violent, this factor weighs in favor of Ward.

10

2.      *Immediate Threat to the Safety of Officers or Others*

The second *Graham* factor asks whether Ward posed a threat to Officers or others. *Graham*, 490 U.S. at 396.  When assessing "reasonableness at the moment," courts should consider whether a reasonable officer on the scene would think that the force is necessary.  *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham*, 490 U.S. at 396).  Forcibly removing a suspect from a vehicle after a car chase is reasonable when there is a heightened suspicion of danger.  *See, e.g., Est. of Brackens v. Louisville Jefferson Cnty. Metro. Gov't*, 680 F. App'x. 362, 366 (6th Cir. 2017) (holding that, after a twenty-minute high-speed chase at ninety miles per hour, forcibly removing the suspect from a vehicle and fracturing his femur was objectively reasonable).  However, the Sixth Circuit has held that officers using elbow jabs and knee strikes on an arrestee with an officer on top of him constitutes excessive force, even when the arrestee resisted handcuffing and disobeyed police orders.  *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008).

Ward alleges that he never exceeded 40 miles per hour.  (ECF No. 4, PageID# 165).  The Police Report attached to Defendants' Motion does not indicate otherwise; in fact, the Police Report states that Ward's top speed during officers' four-minute pursuit was 30 miles per hour, though it also states that Ward had been driving on the sidewalk.  (ECF No. 3-1, PageID# 69).  Ward voluntarily pulled over twice, but his third and final stop was involuntary since the Officers used stop sticks to deflate his tires.  (*Id.*; ECF No. 3-1, PageID# 49).  Defendants argue that Ward was a danger to others while "at the wheel," and that he "refused to exit the vehicle" to justify forcing him from his car.  (ECF No. 3, PageID# 49).  Defendants cite two Supreme Court cases to support their argument that an officer can use force when a suspect is non-compliant.  *See City of*

11

*Tahlequah v. Bond*, 142 S. Ct. 9 (2021) (per curiam) (arrestee shot to death by police after attempting to attack officers with a hammer); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) (per curiam) (arrestee shot by beanbag shotgun when officers believed he was attacking his family with a chainsaw, and when arrestee approached officers with a knife).

The cases cited by Defendants are distinguishable from Ward's; the defendants in both of the cited cases were armed.  Here, it was Ward's "dangerous driving" that Defendants allege posed an imminent danger to citizens.  (ECF No. 3, PageID# 8–9).  Even if using stop sticks and extracting Ward through the broken car window was appropriate to protect others from his driving, there are no facts alleged in Ward's Complaint nor Defendants' Motion suggesting that Ward was armed or dangerous; there are also no allegations that Ward resisted arrest after Officers removed him from his car.[5]  Instead, Officers and Officer Foti inflicted almost all of Ward's injuries *after* he was out of the car and on the ground—prone, handcuffed, hooded, and held down by three Officers.  (ECF No. 1, PageID# 7–8).

The Court cannot find that a reasonable officer on the scene would have found that beating Ward with batons, punching him, stomping on the back of his head, and tasing him three times— all while Ward was on the ground, immobilized, unable to see, and unable to resist—was necessary.  Based on the facts before the Court, this factor also weighs in favor of Ward.

---

[5] The Complaint alleges that Ward was alone in the car at the time, and had no narcotics, alcohol, paraphernalia, nor weapons.  (ECF No. 1, PageID# 5).

3.      *Active Resistance of Arrest or Fleeing*

The third *Graham* factor to consider is the extent of Ward's resistance.  *Graham*, 490 U.S.

at 396.   Active resistance includes "physically struggling with, threatening, or disobeying

officers." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012).  The Sixth Circuit

has stated, "when a suspect actively resists arrest, the police can use a taser (or a knee strike) to

subdue him; but when a suspect does not resist, ***or has stopped resisting***, they cannot." *Rudlaff v.*

*Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) (emphasis added); *Meyers v. Baltimore Cnty., Md.*,

713 F.3d 723, 730 (4th Cir. 2013) (tasing a suspect after he has been secured is excessive force,

but the first three uses of the taser while the suspect was standing and actively resisting were

reasonable).  Relevant to this Court's inquiry is where on the body the arrestee was struck; strikes

to critical areas like the head, throat, neck, heart, and groin, are more serious and require closer

scrutiny than those to the arms, torso, back, and legs.  *Jones v. Cincinnati*, 736 F.3d 688, 695 (6th

Cir. 2012).  Finally, the mere fact that an arrestee flees, without more, does not justify an officer's

use of force.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013) (finding

excessive use of force when officers tackled an arrestee and used their body weight to restrain him

while prone and handcuffed, causing the arrestee's death by asphyxiation); *Baker v. City of*

*Hamilton*, 471 F.3d 601, 607–08 (6th Cir. 2006) (finding excessive use of force after arrestee fled

police officer, surrendered, and was subsequently struck by the officer's service baton).

In *Rudlaff*, the arrestee actively resisted officers who then tased him once and struck his

knee to subdue him. *Rudlaff*, 91 F.3d at 642.  The Sixth Circuit reversed the district court's denial

of the officer's motion for summary judgment because the arrestee was verbally and physically

non-compliant; he told the officers that he would not comply and swung his arms at them during

13

his arrest.  *Id.*  Here, unlike *Rudlaff*, the Complaint alleges that Officers pulled Ward from his car and pinned him to the road.  (ECF No. 1, PageID# 7).  Officer Warner-Sims's letter attached to the Police Report states that Ward "refused to exit his vehicle" and that Officers and Officer Foti "assisted the male from the vehicle placing the male on the ground."  (ECF No. 3-1, PageID# 73). The letter states that Officers and Officer Foti were "trying to gain control" of Ward while he was on the ground.  (*Id.*).  But Defendants offer no explanation of Ward's efforts to resist, if any, or how they justify the force used—particularly Officer Foti's kick to Ward's head.  The Internal Affairs Investigation Report states that Ward was "passively resisting" before Officers handcuffed him; it is unclear and unexplained what that term means.  (ECF No. 3-4, PageID# 77).  There is nothing before the Court to indicate that Ward was resisting *after* he was handcuffed, when excessive force is alleged to have been used.

Ward's allegations, and the Internal Investigation Report, indicate he could not resist at that point.  Once he was on the ground, handcuffed and held down by three Officers, Ward alleges that he was unable to move; he asserts that Officers struck, tased, and kicked him anyway.  (ECF No. 1, PageID# 7).  The Internal Investigation Report bolsters this claim; Officer Warner-Sims and Officer Berry had control over Mr. Ward while Officer Foti stomped on his head.  (*Id.* at PageID# 11; ECF 3-4, PageID# 78).  The Report also states that Officer Foti's kicks to Ward's head were "unnecessary and unneeded," and expressly states that "Ward was restrained and unable to get away nor was he a threat to the officers" after he was handcuffed.  (ECF No. 3-4, PageID# 77–78).

This factor also weighs in Ward's favor.  Although Ward drove away from Officers and Officer Foti twice and refused to get out of his car, once Ward was on the ground and handcuffed,

no more force was needed; the Complaint's allegations and additional facts before the Court suggest that Ward could no longer resist arrest, and that Officers' and Officer Foti's use of force thereafter was unjustified.

Having found that all three *Graham* factors weigh in Ward's favor, Defendants' Motion to Dismiss Count I of Ward's Complaint is denied.

### C.      Failure to Intervene

Count IV alleges that Officers and Officer Foti failed to intervene in violation of Ward's rights.  Under Section 1983, a bystanding officer can be liable for failure to intervene where: 1) the officer observed or had reason to know that excessive force was being used, and 2) the officer could have prevented the harm from occurring.  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). The Court has already determined that a reasonable officer would have known that the force used against Ward was excessive.  Regarding intervention, it appears that one Officer—Officer Warner-Sims—intervened in part; while holding Ward down, Officer Warner-Sims pushed Officer Foti's leg away and told him to stop kicking Ward's head.  (ECF No. 3-1, PageID# 73; ECF No. 3-4, PageID# 77, 78).  However, as to Officers Berry and Gerstenberger, Officer Warner-Sims took no known action to stop them from beating Ward.  In fact, all of the Officers could have prevented the harm occurring at the hands of the other officers, because they were all there while it was occurring.  (ECF No. 1, PageID# 7).  Based on these facts, Defendants' Motion to Dismiss Count IV is denied.

### D.      *Monell* or 'Municipality' Liability of the City and Chief Gardner

In Counts V and VI, the issue is whether the City and Chief Gardner are liable under 42 U.S.C. §§ 1983 and 1988 for failure to investigate, train, or supervise the officers—also known as

*Monell* liability.  To be liable under *Monell*, Ward must allege that the constitutional violation occurred because of a "government's policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish such a policy or custom, Ward could show any of the following: (1) the existence of an illegal policy; (2) an official with final decision-making authority ratified illegal actions; (3) a policy of improper training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.  *Id.*  Here, it is most relevant to analyze the third and fourth methods of establishing *Monell* liability.

1.    *Policy of Improper Training or Supervision*

Under the third method, Ward must eventually prove that the City and Chief Gardner ignored a "clear and persistent pattern of misconduct," that would prompt a need for corrective training due to some prior deficiency in training. *Osberry v. Slusher*, 750 F. App'x. 385, 397 (6th Cir. 2018).  Courts are urged to acknowledge that "in virtually every instance where a person has had his or her constitutional rights violated by a [municipality's] employee, a § 1983 plaintiff will be able to point to something the [municipality] could have done to prevent the unfortunate incident." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).  Further, improper training claims must be supported by a municipality's pattern of factually similar conduct. *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011).  "A government body's 'fail[ure] to act in response to repeated complaints or constitutional violations by its officers' constitutes deliberate indifference for an inadequate training claim," which supports a finding of *Monell* liability. *Jackson v. City of Cleveland*, 586 F. Supp. 3d 737, 752 (N.D. Ohio 2022) (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)).

16

Here, the Complaint cites to alleged deadly police chases and a pattern of misconduct so pervasive that the investigative podcast, "Serial," dedicated a whole episode to discussing the City's police department.  The "Serial" episode investigates an incident during which two of the City's police officers chased and beat another individual, and afterward tried to cover it up.[6]  (ECF No. 1, PageID# 4–5).  The City's alleged failure to address the pattern of misconduct alleged suggests the type of deliberate indifference that could support a finding of *Monell* liability.  *See Jackson*, 586 F. Supp. 3d at 752.  Neither party has submitted affidavits—expert or otherwise—to corroborate or refute the Complaint's allegations concerning the City's relevant pattern of conduct; instead, under a motion to dismiss standard, the Court is obligated to take the allegations in the Complaint as true and to resolve doubts in Ward's favor.  Since Ward's Complaint alleges a pattern of misconduct consistent with Ward's arrest and injuries, Defendants' Motion to Dismiss Counts V and VI is denied.

> 2.  *Custom, Tolerance, or Acquiescence of Federal Rights Violations*

The same conclusion applies to the fourth method of establishing *Monell* liability.  Under this method, Ward must eventually show more than just an improperly trained officer; he must show that a pattern of misconduct was the moving force behind his injuries.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 816 (6th Cir. 2005); *Lowery v. City of Cleveland*, No. 1:05 CV 96, 2006 WL 2010837, AT *5 (N.D. Ohio July 17, 2006).  A "custom" for the purpose of *Monell* liability is a policy that "has not received formal approval through . . . official decisionmaking channels."

---

[6] *You in the Red Shirt, Serial* (Oct. 18, 2018), https://serialpodcast.org/season-three/6/transcript (last visited April 3, 2023).

17

*Jackson*, 586 F. Supp.  3d at 751 (quoting *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990)).  "Before a custom can be the basis for a civil rights violation, the custom must be so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Id.* (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1004 (6th Cir. 1994) (Joiner, J., concurring) (internal quotations omitted).  The Sixth Circuit has found that a custom or tolerance of, or acquiescence to, federal rights violations was present when a plaintiff cited six specific cases of misconduct over a five-year period.  *Osberry v. Slusher*, 750 F. App'x 385, 397–398 (6th Cir. 2018).

Ward alleges a pattern of misconduct in the East Cleveland Police Department.  (ECF No. 1, PageID# 4–5).  He alleges a custom of, and up-the-chain acquiescence to, brutalizing citizens in violation of their federal civil rights.  (*Id.*).  The similarities between the circumstances of the arrest in the mentioned "Serial" episode and the circumstances of Ward's arrest are noteworthy.  Both involved fleeing, followed by an alleged beating and an alleged cover up.  Taken in combination with the other allegations concerning a pattern of car chases and violence, there is an inference at this early stage in the litigation that such conduct has occurred as part of a pattern or practice by the City.  *See Jackson*, 586 F. Supp. 3d at 753 ("Plaintiff as the non-moving party enjoys the benefit of the inference that such conduct occurring in more than one case amounted to a persistent and widespread policy, practice, or custom.").  That said, the Complaint includes plausible allegations of a pattern of unconstitutional conduct, and supervisory ratification of that conduct.  Accordingly, Defendants' Motion to Dismiss Counts V and VI of the Complaint is denied.

### E.    State Tort Claims

Finally, since the Court already found that the Complaint cannot be dismissed based on Ohio's immunity statute, Ward's state tort claims also survive Defendants' Motion.  Using more force than necessary during the course of an arrest could give rise to tort claims of assault and battery under Ohio law. *See D'Agastino v. City of Warren,* 75 F. App'x. 990, 995 (6th Cir. 2003).

   Defendants are also not statutorily immune from Ward's claim for intentional infliction of emotional distress.  To succeed on this claim, Ward must prove that (1) the defendant had reason to know that his actions would result in serious emotional distress; (2) "the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure." *Lombardo v. Mahoney*, 8th Dist. No. 92608, 2009-Ohio-5826, ¶ 6.  "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Id.* at ¶ 7.  Generally, a plaintiff must show more than malice to succeed on such a claim; a proper claim for intentional infliction of emotional distress "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at ¶ 8 (citing *Yeager v. Loc. Union 20*, 453 N.E.2d 666, 671 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (quoting Restatement (Second) of Torts § 73 (Am. L. Inst. 1965))).

The Complaint provides ample factual matter "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Complaint includes the necessary

19

allegations to make out a prima facie case for intentional infliction of emotional distress.   (ECF No. 1, PageID# 14).   The facts upon which those allegations are predicated (which have been thoroughly discussed) could be seen as outrageous to a typical community member—particularly in light of the non-violent misdemeanors of which Ward was convicted.   Since the Complaint alleges that Officers' use of unnecessary force was "willful, wanton, malicious, and oppressive," Ward presents a claim upon which relief can be granted for state torts of assault, battery, and intentional infliction of emotional distress.   Therefore, Defendants' Motion to Dismiss Counts II and III is denied.

## IV.  **CONCLUSION**

While the Court is cognizant of its duty to resolve qualified immunity claims at the earliest possible point in the litigation, *Pearson v. Callahan*, 355 U.S. 223, 232 (2009), the facts currently before the Court do not suggest that any of the Defendants are immune from liability to Ward.   For the reasons set forth above, Defendants' Motion to Dismiss Under 12(b)(6), or in the Alternative, Motion for Summary Judgment (ECF No. 3) is DENIED WITHOUT PREJUDICE to Defendants' ability to file a motion for summary judgment after discovery is completed.

**IT IS SO ORDERED.**

**Date: April 5, 2023**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**